TRIHEALTH, INC., et al.   Plaintiffs

v.

**BOARD OF COMMISSIONERS,**
**Hamilton County, Ohio, et**
**al.   Defendants**

No. C–1–02–913.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 10, 2004.

Timothy Michael Burke, Robert Edward Manley, Rhonda S. Frey, Manley Burke Lipton & Cook, Cincinnati, OH, for Plaintiffs.

Cynthia A. Fazio, Hamilton County Prosecutor's Office Civil Division, Christian Joseph Schaefer, Hamilton County Prosecutor Civil Unit, Susan Marie Gertz, Hamilton County Prosecutor Juvenile, Robin Elise Harvey, Thomas W. Kahle, Ted Thomas Martin, Baker & Hostetler LLP, Cincinnati, OH, for Defendants.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON PLAINTIFFS' FEDERAL CLAIMS, AND DISMISSING PLAINTIFFS' STATE LAW CLAIM WITHOUT PREJUDICE

DLOTT, District Judge.

This matter comes before the Court on the parties' cross-motions for summary judgment on Plaintiffs' federal claims, specifically, Plaintiffs' Motion for Summary Judgment (doc. # 82); County Defendants' Motion for Summary Judgment on Counts I and II of the Complaint (doc. # 73); Defendants University Hospital, Inc.'s and the Health Alliance of Greater Cincinnati's Motion for Summary Judgment and Memorandum in Support on the TriHealth Hospitals' Federal Claims (doc. # 80); and Defendant University of Cincinnati's Joinder In and Adoption of Defendant University Hospital, Inc.'s and the Health Alliance of Greater Cincinnati's Motion for Summary Judgment and Memorandum in Support on the TriHealth Hospitals' Federal Claims (doc. # 81).

For the reasons set forth below, the Court hereby **DENIES** Plaintiffs' Motion for Summary Judgment and **GRANTS** the County Defendants' Motion For Summary Judgment and University Hospital, Inc.'s and the Health Alliance of Greater Cincinnati's Motion for Summary Judgment. Therefore, the Court also **GRANTS** summary judgment to Defendant University of Cincinnati.

## I. BACKGROUND

Plaintiffs in this case are non-profit health care providers TriHealth, Inc., Bethesda Hospital, Inc., The Good Samaritan Hospital of Cincinnati, Ohio, and their president and chief executive officer, John Prout (collectively referred to as the entity "TriHealth"). TriHealth brought suit against the Board of Commissioners of Hamilton County and the individual commissioners in their official capacities (collectively, "County Defendants"), alleging that the County Defendants' actions in contracting for adult indigent health care violate TriHealth's constitutional rights to equal protection and due process and violate the competitive bidding requirements of the Ohio Revised Code.[1]

In the summer of 2001, the County Defendants hired an independent consultant, Jefferson Wells, to study the UC Levy and past versions of the UC Agreement. (Stuckey Aff. ¶ 8.) The County's Tax Levy Review Committee reviewed Jefferson Wells' report and issued both a majority and a minority report. (Id.) Initially, the majority (by a vote of 5–4) report recommended that, in the interest of fairness, the County Defendants consider the effects of expanding the hospital portion of the UC Levy to reimburse other hospitals besides University Hospital and Children's Hospital that provide indigent care. (Id.) Later, one member of the Committee changed his vote, so that the majority of the members of the Tax Levy Review Committee opposed sharing the funds for indigent care among other hospitals. (Id. at ¶ 9.) Eric Stuckey, an Assistant County Administrator, and others wrote a memorandum to the Board of Commissioners recommending against sharing because there was not yet sufficient data on the effects and because sharing would increase administrative costs, which would reduce the funds available for indigent care. (Id. at ¶ 10.)

In November 2001, the taxpayers of Hamilton County approved a five-year tax levy to raise funds for indigent health care services (the "UC Levy"). (doc. # 1 ¶ 15.) In September 2002, the County Defendants entered into a written agreement ("the UC Agreement") with the University of Cincinnati ("UC"), University Hospital, Inc. ("University Hospital") (acting by and through the Health Alliance of Greater Cincinnati ("Health Alliance")) and Children's Hospital ("Children's") whereby University Hospital and Children's would receive the UC Levy funds in exchange for providing indigent care. (See id. ¶¶ 26–32; see also Stuckey aff. ¶ 25.) According to the UC Agreement, both University Hospital and Children's have relationships with UC's College of Medicine and are teaching hospitals. (See doc. # 1, exh. 1 at 2.) Under the UC Agreement, the County transfers the Levy Funds to UC and UC distributes eighty percent of those funds to University Hospital and twenty percent to Children's. (See id. exh. 1 at 10.) TriHealth's claims involve only the County Defendants' actions in contracting for the eighty percent of funds that flow to University Hospital, Inc. and the Health Alliance of Greater Cincinnati ("Defendant Health Care Providers").[2]

1. The parties have agreed to defer discovery and arguments on TriHealth's state law claim pending resolution of the federal law claims.

2. TriHealth acknowledges that it is not similarly situated to Children's because Children's provides specialized care to indigent children, a particular group that the TriHealth Hospitals do not serve. Because TriHealth's claims involve only the part of the UC Agreement regarding adult indigent health care, in discussing TriHealth's challenges to the UC Agreement, the Court will refer to the "contract for adult indigent health care" to emphasize which portion of the UC Agreement is at issue.

Upon consent of the parties, the Court granted University Hospital's and Health Alliance's motion to intervene as Defendants. (Doc. # 5.) Further, the Court ordered that Children's, UC, Drake Hospital ("Drake") and "other indispensable parties" be added as Defendants. (Doc. # 13 at 1.) The Court has since granted both Children's and Drake's respective motions for summary judgment.[3] Thus, the remaining Defendants are 1) University Hospital, UC, and Health Alliance ("Defendant Health Care Providers"); and 2) the County Defendants.

TriHealth seeks primarily declaratory and injunctive relief. (Doc. # 1 at 15.) It seeks a declaration that the UC Agreement is void and illegal, an injunction prohibiting Defendants from making further payments under the UC Agreement, and a "writ of mandamus or in the alternative a mandatory injunction requiring Defendants to engage in competitive bidding for the provision of indigent care to residents of Hamilton County funded by the Health and Hospitalization Levy." (Doc. # 1 at 12–15.)

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that permissibly can be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

## III. ANALYSIS

TriHealth brought its federal claims pursuant to 42 U.S.C. § 1983 alleging violations of both its right to equal protection and its right to due process. This Court has jurisdiction over TriHealth's federal claims pursuant to 28 U.S.C. § 1331. Defendants argue that Tri-

---

**3.** Through affidavits filed in support of their motion, Defendants provide evidence that Hamilton County has two tax levies that by their terms raise money for "[h]ealth and [h]ospitalization [s]ervices." (Affidavit of Amy B. Hoh at 2.) One levy raises money for University Hospital and Children's Hospital ("the UC Levy"); the second raises money for Drake Hospital—a long term acute care facility—and various drug court programs (the "Drake Levy"). (See *id.*) Drake and the Commissioners entered into a separate agreement (the "Drake Agreement") whereby funds from this second levy would be paid to Drake. (See Panioto Aff., exh. B.)

Children's motion for summary judgment was unopposed and therefore granted on procedural grounds. On September 17, 2004, during oral argument before the Court, TriHealth's counsel stated that TriHealth did not oppose Drake's motion for summary judgment because it believed there was no case or controversy between the parties. Counsel for both TriHealth and Drake agreed to this Court entering summary judgment for Drake on the same grounds that it granted summary judgment to Children's in its August 20, 2004 Order. The Court therefore granted Drake's Motion. The Court notes again that neither grant of summary judgment was a decision on the merits.

Health's positions on its two federal claims are incompatible. In TriHealth's equal protection claim, TriHealth argues that because the TriHealth Hospitals are similarly situated to the Defendant Health Care Providers, the TriHealth Hospitals should have been awarded a share of the levy proceeds proportionate to the share of adult indigent health care that they provide. In TriHealth's due process claim, TriHealth argues that it was denied due process because the County Defendants did not apply an Ohio statute requiring all contracts for goods and services costing over $25,000 to be competitively bid, and which if applied would require the entire adult indigent health care contract (and the entire levy proceeds), to be awarded to a single bidder.

The Court agrees with Defendants that these arguments, if successful, would require conflicting solutions—the first, proportionate sharing of the UC Levy funds and the second, exclusive award of the Levy funds—and dual relief cannot be provided.[4] The Court need not grapple with this issue, however, because it finds that Defendants should be granted summary judgment as a matter of law on both of TriHealth's claims.

## A. TriHealth's Equal Protection Claim

### 1. Failure to State a Claim

■ TriHealth premises its equal protection claim on a "class of one" theory. The Supreme Court has recognized equal protection claims where a plaintiff alleges that the State intentionally treated him or her differently from others similarly situated without a rational basis for the differing treatment. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *see also Allegheny Pittsburgh Coal Co. v. County Commission of Webster County. West Virginia,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989).

The "class of one" cases that TriHealth cites are not analogous to this case. In *Olech,* the Supreme Court considered a plaintiff's equal protection claim alleging that the state had demanded a greater easement from her than from other similarly situated landowners as a condition of her receiving municipal water. In *Allegheny Pittsburgh Coal,* the Supreme Court considered a plaintiffs' equal protection claim alleging that the state had treated them differently from other similarly situated taxpayers in assessing the value of their property. 488 U.S. at 338–39, 109 S.Ct. 633. In both of these cases, the state defendant was performing governmental functions when it intentionally treated similarly situated parties differently. By contrast, here the County Defendants were not exercising authority to perform governmental functions, but rather acting as consumers. There is "no authority 'holding or suggesting that the exercise by a state of a consumer's choice between competing products denies the disappointed supplier equal protection of the laws.'" *See Coyne–Delany Co. v. Capital Dev. Bd.,* 616 F.2d 341, 343 (7th Cir.1980).

4. TriHealth acknowledged in later briefing that its two claims are in fact alternative arguments. At oral argument, TriHealth argued that although its arguments are alternative, they are not legally inconsistent. TriHealth argued that under the competitive bidding statute, the County Defendants were required to competitively bid the statute only if they made an exclusive award of the levy funds, as they did under the UC Agreement. By contrast, TriHealth argued that, if the County Defendants proportionately shared the contract, they were not required to competitively bid the statute because they would not be making an exclusive award.

Moreover, TriHealth's allegation that the County Defendants violated the Equal Protection Clause by engaging in disparate treatment in defiance of the controlling law is fundamentally confused. TriHealth's allegations are that 1) the County Defendants treated the TriHealth Hospitals differently from similarly situated parties; and 2) the County Defendants defied the controlling law by not applying the competitive bidding statute. As such, TriHealth implies that when analyzing an equal protection claim, a court should consider the defendant's disparate treatment of similarly situated parties and defiance of controlling law as two separate conditions.

TriHealth misconstrues the standard for Equal Protection cases. To have an equal protection claim, TriHealth must show that the state treated it differently from similarly situated parties when *applying* the controlling law to those parties, not, as TriHealth implies, when defying some other law. The Sixth Circuit highlighted this distinction in *Bower v. Village of Mount Sterling*, 44 Fed.Appx. 670, 2002 WL 1752270 (6th Cir.2002) (unpublished)—a case which TriHealth itself cited—in recognizing the plaintiff's argument that " '[t]he Fourteenth Amendment's Equal Protection Clause prohibits, among other things, *discriminatory application* of a law neutral on its face.' " *Bower*, at 676, 2002 WL 1752270, at *5 (emphasis added).[5]

Thus, if in fact the County Defendants had followed the competitive bidding statute and applied it inconsistently, TriHealth might have had an equal protection claim against the County Defendants (assuming TriHealth could prove that it was a similarly situated party and that the state had no rational basis for its different treatment). *See Peterson Enterprises, Inc. v. Ohio Dep't. of Mental Retardation and Developmental Disabilities*, 890 F.2d 416, 1989 WL 143563, at *3 (6th Cir.1989). The County Defendants did not apply the Ohio competitive bidding statute at all, however, and thus could not have applied it in a discriminatory manner. Therefore, TriHealth does not state a claim under the Equal Protection Clause because it fails to allege the County treated the TriHealth Hospitals differently when applying the controlling law.

Consequently, TriHealth does not state a claim under the Equal Protection Clause, and the Defendants should be granted summary judgment as a matter of law. Alternatively, and as discussed below, this Court holds that even if TriHealth states an equal protection claim, they cannot establish an equal protection violation as a matter of law.

### 2. The Merits of TriHealth's Equal Protection Claim

For TriHealth to establish an equal protection violation, it must show that 1) the TriHealth Hospitals are similarly situated to University Hospital in every material respect; and 2) the County Defendants had no conceivable rational basis for

---

**5.** TriHealth also cites *Bower* for the proposition that a state defendant does not enjoy the presumption that *its* actions were rational when it fails to follow controlling state law. (See Pl. Reply to County Defs. Opp. at 2.) TriHealth takes this citation out of context. First, in *Bower*, the controlling law was clear, whereas here, the applicability of the competitive bidding statute is debatable (and the Court need not consider it). Second, in *Bower*, the controlling law had been unequally applied—the defendant failed to follow the controlling law in the case of two individuals, which was to those individuals' benefit, but strictly applied the controlling law to the plaintiff, which was to his detriment. *Bower*, 44 Fed.Appx. 670, 2002 WL 1752270, at *6–7. The facts of *Bower* emphasize that it is not mere defiance of a controlling law, but rather disparate application of the law, that gives rise to an equal protection claim.

awarding all of the levy proceeds available for adult indigent health care to University Hospital and none to the TriHealth Hospitals. *See Ross v. Duggan*, 113 Fed.Appx. 33, 2004 WL 1152151, at *10 (6th Cir.2004). TriHealth argues that the County Defendants violated its Constitutional right to equal protection because the County Defendants treated the TriHealth Hospitals differently from other similarly situated health care providers, namely Defendant Health Care Providers, by awarding Defendant Health Care Providers all of the UC Levy funds for adult indigent health care even though each of the TriHealth Hospitals also provides some adult indigent health care. Defendants argue that the County Defendants did not violate Tri-Health's right to equal protection because the undisputed facts show that: 1) the TriHealth Hospitals are not similarly situated to the Defendant Health Care Providers; and 2) the County Defendants had a rational basis for their decision to enter into the UC Agreement.

### a. Similarly Situated

■ TriHealth argues that the TriHealth Hospitals are similarly situated to Defendant Health Care Providers because, among other reasons: 1) all are private, non-profit entities exempt from federal and state taxation, and as such are required to treat indigent patients; 2) both Good Samaritan (one of the TriHealth Hospitals) and University Hospital operate within the urban core; 3) both University Hospital and the TriHealth Hospitals are recognized as providers of high quality medical care; 4) both University Hospital and the TriHealth Hospitals provide health care to indigent, Medicare, Medicaid, and

other vulnerable patients and are thus all part of the health care safety net for Hamilton County; and 5) University Hospital and the TriHealth Hospitals provide essentially the same services to the indigent population they serve. (Doc. # 1 at 20–21.)

Defendants argue that the TriHealth Hospitals and Defendant Health Care Providers are not similarly situated because they differ in several material respects. Defendants point out that: 1) University Hospital has the most experience providing care to the indigent and provides more indigent care than any other hospital in the County; 2) Ohio law classifies University Hospital, but none of the TriHealth Hospitals, as a "teaching hospital"; 3) University Hospital is the exclusive provider of certain adult hospital care services in Hamilton County; and 4) while University Hospital and Good Samaritan Hospital are both located in the urban core, Bethesda North, another member of TriHealth, is not. Though TriHealth raised some allegedly disputed issues of material fact in its Response to the County Defendants' Motion for Summary Judgment, TriHealth did not dispute any of the former contentions.[6] (See Pl. Resp. at 13–20.)

Even accepting TriHealth's contentions, the undisputed differences cited by Defendants and noted above support Defendants' claim that Plaintiffs and Defendants are not similarly situated in certain material respects. Thus, no genuine issue of material fact exists and summary judgment should be granted to Defendants on TriHealth's equal protection claim as a matter of law.

---

**6.** In its Response, TriHealth argued that it was a disputed issue of material fact whether University Hospital is the only hospital that is a party which qualifies as a teaching hospital. However, TriHealth did not dispute that un-der Ohio law, of the hospitals that are parties, University Hospital is the only one that qualifies as a teaching hospital. (See Pl. Resp. at 20.)

### b. Rational Basis

■ Even if TriHealth proved that the TriHealth Hospitals were similarly situated to University Hospital, TriHealth would still have to disprove every conceivable rational justification for the County Defendants' decision to award all of the Levy proceeds for adult indigent health care to the Defendant Health Care Providers and none to the TriHealth Hospitals. *37712, Inc. v. Ohio Dept. of Liquor Control,* 113 F.3d 614, 620 (6th Cir.1997). TriHealth attempts to undermine the County Defendants' decision to enter into the UC Agreement by presenting arguments that might support another decision (See Pls. Mot. for S.J. at 21–24), but those contrary arguments do not negate the arguments Defendants set forth supporting the rationality of the County Defendants' decision, let alone every conceivable rational basis for the County Defendants' decision. As Defendant Health Care Providers point out, the issue is not whether the County Defendants made the best decision, but rather whether they made a rational one.

In briefing and at oral argument, Defendants enumerated several undisputed rational justifications for their decision (including those described above and the fact that the County's Tax Levy Review Committee ultimately recommended against sharing the UC Levy funds among various hospitals). Consequently, TriHealth cannot meet its burden of disproving every conceivable rational basis the County Defendants had for treating TriHealth and the Defendant Health Care Providers differently. Thus, summary judgment should be granted to Defendants on TriHealth's equal protection claim as a matter of law.

### B. TriHealth's Due Process Claim

■ For TriHealth to establish a procedural due process claim, TriHealth must show both that it had a constitutionally protected property interest and that the state deprived it of that interest, and that the state remedies for redressing the alleged deprivation are inadequate because they fail to provide procedural due process of law.[7] *Peterson,* 890 F.2d 416, 1989.WL 143563, at *3. TriHealth argues that it has a constitutionally protected property interest in the contract for adult indigent health care. For TriHealth to have such an interest, TriHealth "must have more than a unilateral expectation of it. [It] must, instead, have a legitimate claim of entitlement to it." *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

TriHealth argues that the County Defendants violated its constitutional right to due process because the County Defendants did not competitively bid the contract for the provision of adult indigent health care, as it argues is required under the Ohio competitive bidding statute. Defendants argue that the County Defendants did not violate TriHealth's right to due process because TriHealth does not have a constitutionally protected property interest in the contract.

### 1. The Constitutionally Protected Property Interest

The Sixth Circuit has recognized that "disappointed bidders" have a constitutionally protected property interest in the award of a contract if: 1) the disappointed bidder shows it was awarded the contract at any procedural stage and then the award was revoked; or 2) the state official had limited discretion as to whom the con-

---

**7.** TriHealth has no substantive Due Process claim, as substantive Due Process does not protect ordinary state-created contractual property interests. *See Charles v. Baesler,* 910 F.2d 1349, 1354 (6th Cir.1990).

tract should be awarded and abused that discretion. *See Enertech Electrical, Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 260 (6th Cir.1996).

Plaintiffs cite *Enertech* for the proposition that in cases "when a county commission is vested with discretion about how to proceed in awarding a contract, the courts will intervene where an abuse of discretion is established that deviates from the established process due under the law, such as where the county commission wholly fails to comply with existing legal provisions governing the award of public contracts." (Doc. # 82 at 13, citing *Enertech*, 85 F.3d at 260.) TriHealth implies that in such cases, both a constitutionally protected property right and a deprivation thereof can be found based upon the same procedural error. TriHealth concludes that, because the County Defendants failed to apply the state law requiring competitive bidding and that failure was an abuse of discretion, the County Defendants violated TriHealth's right to due process.

TriHealth is incorrect. First, the Sixth Circuit has specifically rejected the proposition that a plaintiff-disappointed bidder has a constitutionally protected property interest in the procedures used for awarding contracts. *See Peterson*, 890 F.2d 416, 1989 WL 143563, at *3 (citing *Three Rivers Cablevision, Inc. v. Pittsburgh*, 502 F.Supp. 1118 (W.D.Pa.1980)). The *Peterson* court held that "'there can be no property interest in a procedure itself; if there be a protected interest involved here, it is to be found in the benefit whose enjoyment is sought to be regulated by the procedure; namely, the award of the contract.'" *Id.* Thus, TriHealth cannot establish a due process violation solely from a procedural violation.

Second, *Enertech* does not support TriHealth's claim that it can establish a constitutionally protected property right from the alleged procedural abuse of discretion in failing to apply the competitive bidding statute. In *Enertech*, the Sixth Circuit considered Enertech's appeal of the district court's grant of summary judgment to the Mahoning County Board of Commissioners ("the County") on Enertech's due process claim. *Enertech*, 85 F.3d at 258. Enertech argued that it had a constitutionally protected interest in being awarded a contract for which it submitted the lowest bid. Enertech argued that under the Ohio competitive bidding statute, the County did not have the discretion to decide, as it had, that only a vendor who ratified a Project Labor Agreement and a collective bargaining agreement could be awarded the contract. The district court granted summary judgment to the County and Enertech appealed.

On appeal, the Sixth Circuit first stated the principle on which TriHealth relies heavily—that a constitutionally protected property interest in a publicly bid contract can be demonstrated if a bidder can show that "under state law, the County had limited discretion, which it abused, in awarding the contract." *Id.* at 260. The Court went on to note that the relevant section of the Ohio Revised Code in that case, Section 307.90, required that publicly bid contracts be awarded to the "lowest and best bidder." *Id.* The Court held that since the state law did not require acceptance of merely the lowest bid, the state law gave the County discretion in determining to whom to award the contract. *Id.*

*Enertech* shows that, when considering whether a plaintiff has a constitutionally protected property interest, the relevant abuse of discretion is not, as TriHealth suggests, an abuse of discretion in the *procedure* by which or *how* a state awards a contract, but rather an abuse of discretion in choosing to *whom* to award the

contract within the confines of that procedure as provided by state law.[8] *See also Peterson*, 890 F.2d 416, 1989 WL 143563, at \*2 (''a legitimate claim of entitlement to the award of a[ ] contract could arise . . . *if the [state] had limited discretion under local rules as to whom* should be awarded the contract (emphasis added)); *see also United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31 (6th Cir.1992) (analyzing a plaintiff-disappointed bidder's due process claim by inquiring whether state law or local rules *limited the state's discretion as to whom* to award the contract" (emphasis added)). Thus, for this Court to determine whether TriHealth has a constitutionally protected property right, this Court must inquire whether Ohio law limits the County Defendants' discretion in choosing to whom to award a contract, and if so, whether TriHealth had a legitimate claim of entitlement to the contract. *See Curtis Ambulance of Florida, Inc. v. Board of County Com'rs of the County of Shawnee, KS.*, 811 F.2d 1371, 1378 (10th Cir.1987).

If, as Defendants maintain, the competitive bidding statute does not apply to a contract for the provision of adult indigent health care, then the County Defendants' discretion in awarding such a contract was limited only by Ohio Revised Code section 339.11. Section 339.11 authorizes the Board of County Commissioners to enter into an agreement with one or more corporations or associations for "charitable purposes or for the purpose of maintaining and operating a hospital . . . for the care of the indigent sick and disabled . . . . Such board shall provide for the payment of the amount agreed upon in one payment, or installments, or so much from year to year as the parties stipulate." This statute does not limit the County Defendants' discretion in choosing the corporation(s) or association(s) with which it contracts for indigent care. Thus, if the competitive bidding statute does not apply, there is no Ohio law requiring the County Defendants to award the contract to an entity that satisfies certain conditions, and TriHealth has no basis for claiming a constitutionally protected property interest in the contract. *See Solomon*, 960 F.2d at 35 (reversing grant of preliminary injunction to plaintiff-disappointed bidder where the state defendant had discretionary authority to reject any and all bids and, as here, to contract only by agreement).

Even assuming that TriHealth is correct and the County Defendants were required to apply the competitive bidding statute, however, TriHealth cannot establish a constitutionally protected property interest. TriHealth argues that it has a constitutionally protected property interest in the contract for the provision of adult indigent health care under Ohio Revised Code Section 307.86. Section 307.86 requires the Ohio Board of County Commissioners to accept competitive bids for any contracts it enters into on behalf of the County for products and services costing more than $25,000. However, section 307.86 neither mandates awarding a contract to the lowest bidder nor otherwise prescribes to whom a contract should be awarded. Thus, Section 307.86 vests substantial discretion in the County Defendants to determine whom should be awarded a contract.

---

8. Plaintiffs also cite *Pataula Elec. Membership Corp. v. Whitworth*, 951 F.2d 1238 (11th Cir. 1992) in support of their argument. That case is not controlling authority, so the Court declines to discuss it at length. However, the Court notes that the *Pataula* Court held only that plaintiffs stated a cognizable due process claim by alleging that defendants abused their discretion by ignoring a statutory requirement that the lowest responsible bidder be awarded a contract—that is, a state requirement providing to whom a competitively bid contract should be awarded.

Consequently, TriHealth could establish a constitutionally protected property right only if it showed that the County Defendants abused their substantial discretion. In this context, an abuse of discretion " 'implies an unreasonable, arbitrary or unconscionable attitude.' " *See Enertech*, 85 F.3d at 260; *see also Peterson*, 890 F.2d 416, 1989 WL 143563, at *2. Given the County Defendant's substantial discretion, neither TriHealth nor any other entity could claim a constitutionally protected property right in the contract—they could have nothing but a unilateral expectation of being awarded the contract. *See Curtis Ambulance*, 811 F.2d at 1384. Thus, TriHealth cannot establish that it would have had a constitutionally protected property right even if the County Defendants were required to competitively bid the contract for adult indigent health care under the Ohio competitive bidding statute.

TriHealth argues that it cannot provide evidence of a constitutionally protected property right as would a traditional disappointed bidder because it was not given the opportunity to make a bid. In so arguing, TriHealth again conflates the argument that the County Defendants' failure to competitively bid the contract for adult indigent health care created a constitutionally protected property right with the argument that the County Defendants' failure to bid the contract deprived TriHealth of that right without due process of law. As shown above in Section III.B.1., this argument misreads the applicable law. The fact that TriHealth was disadvantaged by the County Defendants' decision not to competitively bid the contract—whether or not that decision complied with Ohio law— does not create for TriHealth either a constitutionally protected property right or a due process violation. *See Solomon*, 960 F.2d at 35. As the court explained in *Three Rivers:*

Recognition of the fact that the violation of a law is not, ipso facto, a deprivation of due process to all persons affected thereby is fundamental to an understanding of procedural due process. The due process clause is a narrow, personalized guarantee which only protects against the deprivation of one's own liberty and property; it is not a catch-all provision designed to promote the interest of society generally in the obedience of its laws.

502 F.Supp. at 1128.

### 2. Inadequate Remedy of the Alleged Due Process Violation

Because the Court has held that TriHealth does not have a constitutionally protected property right, the Court need not address whether TriHealth has an inadequate remedy under Ohio law. *See Curtis Ambulance*, 811 F.2d at 1375 ("[t]he process requirement necessary to satisfy fourteenth amendment procedural due process comes into play only after plaintiff has shown that it has a property or liberty interest.")

## IV. CONCLUSION

As both TriHealth and all Defendants filed motions for summary judgment, the parties all asserted that there are no disputed issues of material fact in this case. However, in TriHealth's responses to both the County Defendants' and Defendant Health Care Providers' respective motions for summary judgment, and at oral argument on the cross motions for summary judgment, TriHealth argued both that: 1) there are no disputed issues of material fact and that the law based upon the undisputed facts requires judgment for them; and 2) in the alternative, there are various disputed issues of material fact precluding summary judgment for the Defendants. Clearly, Plaintiffs' positions are incompatible: the Court could not grant summary

judgment to TriHealth, or Defendants of course, if the Court found that there were disputed issues of material fact.

However, TriHealth's inconsistent arguments are practically irrelevant. First, TriHealth has no equal protection claim under the law. Second, even if TriHealth did state such a claim, those facts which Plaintiffs claim are disputed are not material because there are sufficient undisputed facts in the record to support the conclusions that: 1) the parties are not similarly situated; and 2) the County Defendants had a rational basis for their decision to contract solely with the Defendant Health Care Providers. Thus, there is no issue for trial on TriHealth's equal protection claim because there are not sufficient facts for a jury to find to the contrary. As TriHealth's due process claim turns on whether TriHealth has a constitutionally protected property interest, which is a question of law, there are no factual disputes to resolve. Consequently, there is no genuine issue of material fact to preclude granting summary judgment to all Defendants.

Because the Court grants summary judgment to Defendants on all of TriHealth's federal claims, and because the Court has not accepted briefing or heard argument on the state law claim, the Court may and does decline to exercise pendant jurisdiction over TriHealth's remaining state law claim. *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir.1996); *see also Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 900 (6th Cir.2001).

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Summary Judgment and **GRANTS** the County Defendants' Motion For Summary Judgment and University Hospital, Inc.'s and the Health Alliance of Greater Cincinnati's Motion for Summary Judgment. Therefore, the Court also **GRANTS** summary judgment to Defendant University of Cincinnati, which joined in Defendant University Hospital, Inc.'s and the Health Alliance of Greater Cincinnati's Motion for Summary Judgment. The Court **DISMISSES** TriHealth's state law claim without prejudice to refiling it in the proper state forum.

IT IS SO ORDERED.