NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0523n.06

No. 17-1386

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TERRENCE HILL, | ) | **FILED** |
| | ) | Oct 22, 2018 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CITY OF JACKSON, MICHIGAN; JACKSON | ) | COURT FOR THE EASTERN |
| COUNTY, MICHIGAN, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: GIBBONS, WHITE, and STRANCH, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** This appeal concerns the demolition of a home at 1010 Maple Avenue in Jackson, Michigan, as a part of the efforts of the City and County of Jackson to remove blight. Terrence Hill purchased 1010 Maple Avenue via quitclaim deed at a public auction held by the County, but he did not receive the required seller's notice that the property was condemned. The City then demolished the home subject to an existing demolition order that had been issued while the County was the property owner. Hill argues that this unnoticed demolition was without due process of law and violated his equal protection rights. We conclude that the district court correctly held for the City and the County on Hill's claims.

I.

The City of Jackson, Michigan, (the "City"), contains many dilapidated and abandoned homes and has adopted programs to deal with such dangerous and unsafe buildings. Under Chapter 17 of the City Code, City inspectors investigate the dwellings, and if a home is found to be

dangerous, inspectors will condemn it, and the City may order it demolished. Jackson City Code § 17-27(b) (stating that if a property is found to be a dangerous building, then the City Code requires that "the division [] commence proceedings to cause its repair, rehabilitation, or demolition"). The County of Jackson (the "County") is often the owner of such condemned buildings, as the County forecloses on and takes possession of blighted properties on which an owner has failed to pay taxes. The County periodically holds public tax foreclosure sales of these properties, including of properties with condemned structures. Mich. Comp. Laws § 211.78m(2). Section 17-27(l) of the Jackson City Code[1] requires that an owner of a condemned property inform any purchaser of the property's condemned status prior to sale and that the purchaser sign a notarized statement acknowledging the receipt of this notice and accepting responsibility for the property's condition.[2] Jackson City Code § 17-27(l).

In April 2011, the County became the owner of 1010 Maple Avenue (the "Property") through tax foreclosure. In January 2012, building inspectors for the City found that the dwelling on the Property was a "[d]angerous [b]uilding or [s]tructure" as defined by the Jackson City Code. DE 26-3, Dangerous Bldg. Rep., Page ID 366–67; Jackson City Code § 17-27(b). In accordance

---

[1] In its entirety, the provision states:

*Transfer of ownership*. It shall be unlawful for the owner of any building or structure alleged to be dangerous who has received a notice and order, or upon whom a notice and order bas been served pursuant to subsection (c)(2) of this section, to sell, transfer, or otherwise dispose of to another until the provisions of the notice and order have been complied with, or until such owner shall first furnish the grantee or transferee a true copy of said notice and order issued by the building official, and shall furnish to the building official a signed and notarized statement from the grantee or transferee acknowledging the receipt of such notice and order, and fully accepting the responsibility, without condition, for making the required repairs, rehabilitation, or demolition to the alleged dangerous building or structure as required by such notice and order.

Jackson City Code § 17-27(l). The referenced "notice and order" also includes a condemnation-notice requirement and the filing of an "Affidavit of Disclosure." DE 26-5, Not. & Order, Page ID 370.

[2] One reason for mandating this disclosure is the City Code's authorization of the City's seeking reimbursement for the cost of demolition from owners of condemned properties. *See* Jackson City Code § 27-17(f)(5). Indeed, the City sought such reimbursement from Hill as a counterclaim in this action. The district court dismissed this counter-claim *sua sponte*, citing the lack of notice provided Hill. The City has not appealed this determination.

with City Code procedures, the City then issued a "Notice and Order" of this condemnation to the owner of the Property—the Jackson County Treasurer—and posted this Notice on the Property. Jackson City Code § 17-27(c)–(d). The Notice and Order alerted the County that the structure was deemed "Dangerous and Unsafe," informed the County of its ability to attend a "hearing before the Building Code Board of Examiners and Appeal [to] show cause why this Notice and Order should not be upheld," and advised the County of its legal disclosure obligations. DE 26-5, Not. & Order, Page ID 369–70. Specifically, the Notice and Order instructed the County "not [to] transfer the property or structure to another person without first giving notice to the buyer and filing an 'Affidavit of Disclosure' indicating that the new owner has been advised of and will fully accept and comply with outstanding code violations"—i.e., advised the County that it must comply with the provisions of City Code § 17-27(l). *Id.* at 370. A notice to this effect was also publicly filed with the Jackson County Register of Deeds. The City notified the County by a "notice of hearing" dated February 27, 2012, that the Building Code Board of Examiners and Appeals would hold a hearing on March 8, 2012. The City sent the County a second "notice of hearing" dated May 4, 2012, stating that a hearing would take place on May 17, 2012. The County chose not to contest the Property's condemnation, and, in May 2012, the City's Board of Examiners upheld the condemnation and set the home on the Property for demolition.

In September 2012, before the demolition was carried out, the County sold the Property to Terrence Hill for $400 through its public auction process. Although the Auction Booklet instructed prospective purchasers to "[c]heck with the City of Jackson for any possible Condemnation Order/Ordinance Violations Pending," the County did not notify Hill that the structure on the Property was condemned, and it did not provide or file the affidavit of disclosure required by § 17-27(l) and the Notice and Order. DE 37-8, Auction Booklet, Page ID 1672. After winning the

auction, Hill checked with the City's Neighborhood and Economic Operation department and learned for the first time that the structure on the Property was condemned—though at that time he was erroneously told that it was not on a demolition list.

Hill received a quitclaim deed to the Property on October 10, 2012, and, believing that he could get the home up to code, began working on improvements. Hill restored utility services, bought roofing material, kitchen appliances, and carpeting, and he contacted the relevant City department to obtain required building permits for the home—though the permits were not issued. On January 18, 2013, the energy provider disconnected the Property's utility services and removed the meters. Hill then contacted the City, at which time the City advised Hill that it would not issue the building rehabilitation permits for the Property and informed him that the structure was slated to be demolished. Three days later, on January 21, 2013, a City contractor demolished the home.

Hill then brought this suit in Michigan state court, alleging procedural due process, substantive due process, and equal protection violations and seeking injunctive relief and damages under 42 U.S.C. § 1983.[3] The City and County then removed to the U.S. District Court for the Eastern District of Michigan. The district court granted the County's motion to dismiss the equal protection claims against it. The district court then granted summary judgment for the City on all of Hill's claims,[4] and later granted summary judgment for the County on Hill's remaining due process claims.[5]

---

[3] Hill's complaint also included claims for violation of equal protection and due process rights under the Michigan Constitution, though it does not appear that these claims were discussed or briefed in the district court, nor are they raised in this appeal.

[4] In granting the City's summary judgment motion, the district court entered an order "adopt[ing] the reasoning" from an opinion it issued the same day in a companion case, *Schwab v. City of Jackson*, No. 14-cv-11074, as "the briefing, facts, and legal issues in each case appear essentially identical." DE 43, Order Granting City's Mot. Sum. J., Page ID 1773. The citations to that opinion's reasoning therefore reference the relevant docket entry for *Schwab*—14-cv-11074, DE 44, Sum. J. Order for City, Page ID 1841.

[5] In granting the County's motion for summary judgment, the district court similarly "adopt[ed] the reasoning from [an] order" issued in *Schwab*. DE 60, Order, Page ID 2614. Unlike the opinion for the grant of the City's motion,

II.

We review a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim *de novo*. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Grant of a motion to dismiss is proper if this plausibility standard is not met. *See id.*

We review a district court's grant of summary judgment *de novo*. *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, we "draw all reasonable inferences in favor of the nonmoving party." *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In doing so we ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

---

the opinion and order related to the County's motion for summary judgment *is* available on Hill's docket at DE 64, though the opinion and order references and discusses the plaintiff in the companion case, Monika Schwab.

III.

A.

Hill first argues that the City and County deprived him of his property without due process of law in violation of the Fourteenth Amendment. The Fourteenth Amendment states that "[n]o State shall . .. deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Thus, "[p]rocedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). Hill argues that because the City and the County willfully chose not to tell him about the demolition order for the Property, they violated his procedural due process rights.

The district court granted summary judgment for the City after concluding that the City's condemnation procedure satisfied due process, as it gave sufficient notice to the owner of the Property—which at the time of the condemnation was the County—that the Property had been condemned and gave the owner the opportunity to contest the condemned status. Moreover, it held that the § 17-279(l)'s mandatory condemnation-notice requirement "adequately protect[ed] future purchasers of the property (so long as owners comply with the procedures)." 14-cv-11074 DE 44, Sum. J. Order for City, Page ID 1857–58. In granting summary judgment for the County, the district court concluded that, although it did not comply with the City ordinance requiring condemnation notice, "[i]n doing so, it functioned as a seller—nothing more" and that "[Hill] has not shown that the County deprived h[im] of any property interest by its failure to comply with the ordinance's disclosure requirement." DE 64, Amended Order, Page ID 2628.

Although we appreciate Hill's situation, we conclude that judgment for the defendants here was proper, though under different reasoning than that applied by the district court. Under our

precedent interpreting *Parratt v. Taylor*, 451 U.S. 527 (1981),[6] Hill was required to plead and prove that there is no adequate state-law remedy for this deprivation before bringing a § 1983 claim for damages based on a procedural due process violation. Because he has not done so, he cannot succeed on his claims here. *See Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014).

The *Parratt* doctrine divides procedural due process claims between those that "'involv[e] a direct challenge to an established state procedure' and 'those challenging random and unauthorized acts.'" *Id.* at 907 (quoting *Mertik v. Blalock*, 983 F.2d 1353, 1365 (6th Cir. 1993)). As to the latter, we require that before bringing a § 1983 claim for damages, the plaintiff show "a loss for which available state remedies would not adequately compensate the plaintiff." *Id.* (quoting *Warren*, 411 F.3d at 709). This is because "[w]hen a deprivation occurs through an established state procedure, 'then it is both practicable and feasible for the state to provide pre-deprivation process, and the state must do so regardless of the adequacy of any post-deprivation remedy,'"; however, "when a random and unauthorized deprivation occurs, 'the pre-deprivation procedures are simply impracticable and an adequate post-deprivation remedy affords all the process that is due.'" *Silberstein v. City of Dayton*, 440 F.3d 306, 316 (6th Cir. 2006) (quoting *Walsh v. Cuyahoga Cty.*, 424 F.3d 510, 513 (6th Cir. 2005)).

Here, the County, by failing to comply with § 17-27(l), committed an unauthorized act that undermined otherwise robust procedures ensuring adequate notice of condemnation to purchasers. The "established [City] procedure" itself was not flawed—instead, the County prevented the correct operation of these procedures by its violation of the disclosure ordinance. Hill was

---

[6] *Parratt* was overruled on another point of law by *Daniels v. Williams*, 474 U.S. 327 (1986), but continues to apply to procedural due process claims. *See e.g.*, *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014).

therefore required to show that there is no adequate state-law remedy for this violation before bringing a § 1983 action for damages.

As the district court observed in granting summary judgment for the City:

> [T]he real issue in the present case is not the procedures that the City used to condemn and demolish [Hill]'s property; rather, the issue is the County's alleged failure to provide [Hill] notice of, and obtain [his] acknowledgment of, the condemnation order. Under the circumstances present, the County's alleged failure undermined the framework designed to ensure that prospective buyers are aware of and comply with condemnation notices.

14-cv-11074 DE 44, Sum. J. Order for City, Page ID 1859. The City employs comprehensive procedures for condemnation and demolition actions—providing notice and opportunity appear and present evidence at a hearing before the Building Code Board of Examiners—and this process was afforded the County, who was the owner of the Property at the time of condemnation. The City's procedures likewise ensure that owners are not able to offload such condemned properties to unwitting buyers by mandating an affidavit of disclosure before a transfer in ownership. *See* Jackson City Code § 17-27(l). Had the County followed this ordinance, then Hill would have been able to assess whether it was worthwhile to acquire the Property in light of the condemnation and could have purchased (or declined to purchase) it with the knowledge that the structure on it was condemned.

The tension between the facts of this case and conventional procedural due process analysis also highlights the applicability of the *Parratt* doctrine.[7] As discussed, the City provided extensive

---

[7] By "conventional procedural due process analysis" we mean the two-step analysis that first asks whether a protected property or liberty interest exists and then determines what procedures are required to protect that interest. *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990). In the second step of this analysis, we employ the balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what process is due. *See id.* at 335. Although the Supreme Court has stated that "*Parratt* is not an exception to the *Mathews* balancing test, but rather an application of that test to the unusual case in which one of the variables in the *Mathews* equation—the value of predeprivation safeguards—is negligible in preventing the kind of deprivation at issue," *Zinermon v. Burch*, 494 U.S. 113, 129 (1990), functionally, a finding that the *Parratt* doctrine applies results in disposition of the case before engaging in the conventional procedural due process analysis, *see Daily Servs.*, 756 F.3d at 907–09 (holding for defendant without engaging in complete procedural due process analysis after finding *Parratt* applicable).

condemnation procedures, including notice and opportunity to appear to the then-owner, the County, and it was only the County's unauthorized violation of § 17-27(l) that prevented Hill from receiving notice of the Property's condemnation status. And Hill fails to conceptualize any property interest of which the County deprived him, as the County simply failed to comply with § 17-27's mandatory disclosure requirements in its capacity as a seller—it was the City that demolished the structure. Hill instead leverages his critiques at the County's failure to disclose the Property's condemned status. But violation of City code and deception in property conveyance—at least as articulated here—seems more properly characterized as a tort. *Cf. DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999) ("Failure of the citation to comply with state law does not, however, automatically translate into a deprivation of procedural due process under the United States Constitution."). Without knowing that there is otherwise no available remedy for the County's violation here, a § 1983 claim is incongruous.

And though the burden rested with Hill to plead and prove the absence of state-law remedies, there is reason to believe that such a remedy would be available here. We find compelling the district court's careful analysis concluding that the County has not shown it is immune from the notification obligations of § 17-27(l)—an argument the County has not raised on appeal. DE 64, Amend. Order, Page ID 2622–26; *see* Jackson City Code § 17-27(l). Moreover, in assessing this claim, the district court noted that, even if it did accept the County's argument on this point, it "would only preclude the Board of Examiners from authorizing a proceeding against the County . . . not necessarily immunize the County from a suit brought by a private party . . . arising out of a violation of [§ 17-27(l)]." DE 64, Amend. Order, Page ID 2623–24. The likely availability of (and better fit of) a state law remedy, emphasizes the applicability of the *Parratt* doctrine to Hill's procedural due process claims.

Thus, because the County's failure to inform Hill—the real issue in this case—was not an "established state procedure" but more akin to a "random and unauthorized" act, it falls within the ambit of the *Parratt* doctrine. *See Daily Servs.*, 756 F.3d at 907; *Mitchell v. Fankhauser*, 375 F.3d 477, 483–84 (6th Cir. 2004). Hill was therefore required to "explain why the ability to be heard in state court . . . even in the absence of damages, is insufficient to remedy [his] process violations" prior to the district court hearing this claim. *Daily Servs.*, 756 F.3d at 910; *see also Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983) ("[I]n section 1983 damage suits for deprivation of property without procedural due process the plaintiff has the burden of pleading and proving the inadequacy of state processes, including state damage remedies to redress the claimed wrong."). Because he has not done so, his procedural due process claims against the City and County should have been dismissed. We therefore affirm judgment for the defendants on these claims.

B.

Hill also challenges the district court's grant of summary judgment for the City and County on his substantive due process claim. We affirm.

"Substantive due process claims are of two types. The first type includes claims asserting denial of a right, privilege, or immunity secured by the Constitution or by federal statute . . . . The other type of claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them." *Mertik*, 983 F.2d at 1367. Hill has alleged the latter type, claiming that the City and County violated substantive due process by demolishing the structure without providing effective notice to him. The test is therefore whether the government action complained of is arbitrary or "shocks the conscience." *Id* at 1367–68 (quoting *McMaster v. Cabinet for Human Res.*, 824 F.2d 518, 522 (6th Cir. 1987)); *see also Rochin v. California*, 342 U.S. 165, 172 (1952).

The district court granted summary judgment for the City after concluding that the City enacted and followed specific ordinances governing demolition of abandoned buildings and provided the then-Property owner, the County, with adequate notice.[8] We agree that the City's actions are not conscience-shocking, particularly given the City's important interest in controlling blight by demolishing abandoned homes. *See Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994) ("So far as we know, or have been informed, no court has held that it shocks the conscience for municipal authorities, acting pursuant to an unchallenged ordinance, to order the destruction of a building found by responsible officers to be a nuisance or threat to public health or safety."). As to the County, although it violated ordinance § 17-27(l) in failing to provide Hill the affidavit of disclosure, this does not shock the conscience so as to amount to a substantive due process violation. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) ("[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.").

Moreover, nothing in Hill's briefs in the district court or in this appeal raises a comprehensible argument otherwise. In opposing the City's and County's motions for summary judgment on his substantive due process claims in the district court, Hill mounted no argument at all, but merely re-stated the count from his complaint. DE 54, Hill Br. Opp. County's MSJ, Page ID 2335 (stating "Count 2: Violation of his substantive due process rights," which is the only mention of substantive due process in the brief); DE 34, Hill Br. Opp. City's MSJ, Page ID 1026 (same).) His substantive due process arguments could likewise be considered waived. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) ("[A]n argument not raised before the district court is waived on appeal to this Court.").

---

[8] Hill does not challenge the validity of the City's condemnation and demolition procedures, but instead the City's means carrying them out here.

C.

Hill lastly claims that the City and County violated his right to equal protection. The Equal Protection Clause prohibits discrimination by the government that "burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005). In the district court, Hill argued that the City and the County violated his right to equal protection under the third theory—a class-of-one violation—because similarly situated property owners were issued building permits to make necessary improvements to their properties, while Hill's request was denied. The district court granted the County's motion to dismiss the equal protection claim against it, and later granted summary judgment in favor of the City on this claim. The district court was correct in its rulings for the County and City.

Hill's complaint does not state a plausible claim against the County for an equal protection violation. *See Iqbal*, 556 U.S. at 678. As the district court noted, "[a]ll of the relevant facts and allegations relating to the failure to issue a rehabilitation permit apply solely to the City." DE 20, Order Granting Mot. Dismiss, Page ID 184. In his complaint Hill did not allege, nor did he demonstrate to the district court, that the County had any role in such permitting decisions, and the claim was therefore properly dismissed.

As to the City, even drawing all reasonable inferences in his favor, Hill cannot succeed in his equal protection claim. *See Int'l Union*, 434 F.3d at 483. As an initial matter, to bring a class-of-one equal protection claim, a party "must claim that the government treated similarly situated persons differently," *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008), and that "it and other individuals who were treated differently were similarly situated in all material respects," *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009).

Here, Hill has not done so, as his only evidence in support of differing treatment is his own allegation that the City issued a rehabilitation permit to the owner of 1201 East Ganson Street, while denying his request. The record, however, indicates that the owner of 1201 East Ganson Street entered into a written agreement with the City to fully rehabilitate that property prior to being issued a permit. Hill was offered, but did not enter into, such an agreement with the City and therefore has not shown that he is similarly situated to this other owner.

Even were Hill able to show that he was similarly situated to the other owner, the City's differing treatment of Hill would still be subject to rational basis review only. *See TriHealth, Inc.*, 430 F.3d at 788. As recognized by the district court, Hill "has not presented evidence that the City acted irrationally or arbitrarily when it denied [his] permit application." 14-cv-11074 DE 44, Sum. J. Order for City, Page ID 1862. To do so, he would need to "negat[e] every conceivable basis which might support the government action." *TriHealth, Inc.*, 430 F.3d at 788. Hill has not met this burden. The record supplies rational reasons for denying the permit application, such as Hill's refusal to enter into a rehabilitation agreement, and Hill does not provide reasons why this denial was irrational.

Indeed, in his brief on appeal, Hill does not even argue that the district court was incorrect in its conclusion that there was no equal protection violation regarding Hill's request for a permit— Hill's brief does not mention the permitting process or the district court's reasoning at all. Instead, Hill attempts to recast his equal protection claim as one for animus arguing that the "municipalities arbitrarily created a situation where Hill could not get notice," in addition to making general complaints about the public auction process for foreclosed homes. CA6 R. 15, Hill Br., at 31–32. These animus-related arguments, in addition to being undeveloped, have been waived, as they were not raised in the district court. *Scottsdale Ins. Co.*, 513 F.3d at 552; *see also Galinis v. Cty.*

*of Branch*, 660 F. App'x 350, 356 (6th Cir. 2016). And because Hill's brief on appeal does not raise any argument related to the permitting process, the district court's reasoning on that point is conceded. *See Youghiogheny & Ohio Coal Co. v. Milliken*, 200 F.3d 942, 955 (6th Cir. 1999) ("[A]rguments not raised in the proponent's opening brief on appeal are generally considered abandoned."); *see also Galinis*, 660 F. App'x at 356 (argument not raised in initial brief is waived). We therefore affirm the district court's resolution of Hill's equal protection claims.

IV.

For the reasons stated, we affirm the district court.

**HELENE N. WHITE, Circuit Judge, concurring in part and dissenting in part.**

I agree with the majority's disposition of Hill's substantive-due-process and equal-protection claims. I respectfully dissent regarding Hill's procedural-due-process claim.

As the majority notes, the City's Code of Ordinances contains various provisions aimed at protecting prospective buyers of condemned property. Section 17-27(d)(2) requires the building inspection division to record all dangerous building notices, orders, and decisions upholding those orders with the county register of deeds within 20 days of the notice, decision, or order.[1]

Section 17-27(l)[2] requires an owner of a condemned property (here, the County) to inform any purchaser (here, Hill) of the property's condemned status prior to sale and obtain from the

---

[1] Section 17-27(d)(2) provides:

> The building inspection division shall record with the county register of deeds all dangerous structure condemnation notices and orders and building code board of examiners and appeals decisions upholding notices and orders within twenty (20) days of such notice, decision or order.

Jackson Code of Ordinances § 17-27(d)(2).

[2] Section 17-27, titled "Abatement of nuisances; procedure," provides in pertinent part:

> (l) *Transfer of ownership*. It shall be unlawful for the owner of any building or structure alleged to be dangerous who has received a notice and order . . . to sell . . . to another until the provisions of the notice and order have been complied with, or until such owner shall first furnish the . . . transferee a true copy of said notice and order issued by the building official, and shall furnish to the building official a signed and notarized statement from the . . . transferee acknowledging the receipt of such notice and order, and fully accepting the responsibility, without condition, for making the required repairs, rehabilitation, or demolition to the alleged dangerous building or structure as required by such notice and order.
>
> (m) *Penalties*. Any person who . . . causes or allows such a building to be reoccupied without satisfying all requirements of a notice and order . . . or who transfers property in violation of subsection (l), shall be guilty of a misdemeanor and punished upon conviction thereof as provided in section 1-18 of this Code.
>
> . . . .

Jackson Code of Ordinances, § 17-27 (l) & (m). Section 1-18 provides in pertinent part:

> every person convicted of a violation of any provision of this Code . . . shall be punishable by a fine of not more than five hundred dollars . . . and costs of prosecution or by imprisonment for not more than ninety (90) days, or both[;] such fine, costs and imprisonment in the discretion of the court . . . . Each act of violation and every day upon which any such violation shall occur shall constitute a separate offense.

purchaser a notarized statement acknowledging the receipt of this notice and accepting responsibility for the property's condition. Maj. Op. at 2-3.

Both the City and County violated § 17-27. The City recorded the condemnation but not the decision and order upholding the condemnation, contrary to § 17-27(d)(2). Thus, even had Hill gone to the register of deeds he would not have learned that the property had been set for demolition because the Board's decision upholding condemnation, which states that the property will be demolished, was not recorded. And, the County acknowledges that it violated § 17-27(l), claiming that compliance was "impractical, if not impossible given the context of the auction process," presumably referring to the large number of houses it auctioned. County Br. 10. But Hill presented evidence that compliance with § 17-27(l) was neither impossible nor impractical, and that the City knew the County had a policy of ignoring the Code's notice requirements.

Frank Donovan, the City's Assistant Director of the Department of Neighborhood and Economic Operations, testified at deposition that he was present at the County auction at which Hill purchased the property and that he sought, but was denied, the County Treasurer's permission to address the attendees *before* the auction began so that he could announce his presence and the fact that he could provide information regarding whether individual properties had been condemned, and, if so, the work that would be required to remove the property from the condemnation list:

> I went to the auction with NES evaluations [reports of property conditions and needed repairs] in hand and offered to the county treasurer to allow me to address the whole body before they even began bidding. And she would not allow me . . . .

---

Jackson Code of Ordinances § 1-18; *see also* Mich. Comp. Laws Ann. § 117.4i, which limits penalties of persons who violate city ordinances to a fine of $500 or imprisonment for 90 days, or both. The City asserts, and Hill acknowledges, that the Michigan legislature excluded a Home Rule City like Jackson from imposing sanctions against a tax foreclosing body such as Jackson County's Treasurer. *See* Mich. Comp. Laws Ann. § 117.4q(3) ("This section does not authorize a proceeding against a foreclosing governmental unit."). City Br. 7; Hill Br. 23.

> So I was there with my tablet and the NES evaluations. And a lot of the people that came to the auction recognized me and knew me as the chief building official . . . .
>
> But the [Jackson County] treasurer [Karen Coffman] would not allow me to have that conversation before the auction.
>
> . . . .
>
> My concern is you're going to buy a piece of property that's condemned and we're going to be taking it down. I knew there would be a battle there. And so I was trying to circumvent the battle.

PID 1161-62/Donovan. Dep.

In addition, Patrick Burtch, the City's Director of Community Development and Assistant

City Manager beginning in May 2011 and later City Manager, testified at deposition that he too

was present at the September 2012 auction:

> [W]e didn't want people to purchase homes [at a County auction] that were condemned already. You know, that creates a lot of other problems. And people were actually – I've actually sat in auctions and watched people purchase homes that were already condemned.
>
> Q Why didn't you want people to do that?
>
> A Because we knew at some point when they're condemned it's very difficult. You know, we don't condemn houses because . . . it just isn't painted. We condemn houses because – at that time, because they were absolutely dangerous. And we knew that fixing these things were going to be nearly impossible.
>
> And a lot of people would bid on houses thinking they'd get a house for a couple thousand dollars or less, thinking that now I can move into this house. And we knew that the house didn't have any utilities in it, most of the windows were gone. There was just no – it was going to be impossible to fix.
>
> . . . .
>
> Michelle and Frank [Donovan] had never been to an auction as far as I knew. And we were going to see—we had known that a number of these houses were condemned that were going up for sale and we wanted to look at how the process is.

PID 2343, 2363-65/Burtch dep. Burtch testified that his staff took NES reports to the auction, and

his recollection was that Jackson County Treasurer Coffman told his staff they could not distribute

the reports before bidding began. PID 2367. Burtch expected that the County would tell bidders which properties were condemned, but at that time (September 2012) the County did not do so.[3]

On October 10, 2012, Jackson County Treasurer Karen Coffman, the same official who refused to permit Donovan to notify bidders of the status of auction properties and who had received the City's notices of condemnation and demolition regarding the 1010 Maple Street property, transferred the property to Hill knowing that the County had not notified Hill about the property's condemnation or that the City had set the property for demolition in May 2012.

Although aware of the notice problems and that Hill had attempted to obtain building permits, the City did not inform Hill of the demolition order until January 18, 2013, without providing a demolition date even then. Three days later a City contractor demolished the home.

Donovan's and Burtch's testimony of good intent notwithstanding, Hill produced evidence that the City proceeded with its condemnation procedures, including demolition, although it had actual knowledge that the County had a policy of ignoring § 17-27(l)'s notice requirements; that the County refused to permit the City's representatives to remedy the situation; that the auction purchasers had no knowledge that the properties had been condemned or were subject to demolition; and that the City's otherwise adequate procedures were insufficient to protect the auction purchasers' due process rights.

This evidence sufficiently establishes both that the City was aware of the County's routine violations of § 17-27(l)'s notice requirements, and that there was nothing random about the noncompliance. "*Parratt* [*v. Taylor*, 451 U.S. 527 (1981),] does not apply to deprivations of property allegedly not due to random and unauthorized acts." *Wilson v. Civil Town of Clayton,*

---

[3] When Burtch was deposed in April 2015, the County's practice was to disclose to bidders that houses had been condemned, although his testimony is unclear whether he meant that the County discloses condemnations before bidding begins or the County follows § 17-27(l)'s notice requirements. PID 2369.

*Ind.*, 839 F.2d 375, 378 (7th Cir. 1988). Under the circumstance that Hill presented ample evidence that the County's violation of § 17-27(l) was not a random and unauthorized act, I do not agree with my colleagues to affirm the district court's grant of summary judgment under *Parratt*.