RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0470p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

TRIHEALTH, INC., et al.

> *Plaintiffs-Appellants,*

*v.*

No. 05-3195

BOARD OF COMMISSIONERS, HAMILTON COUNTY, OHIO, et al.,

> *Defendants-Appellees.*

—————————

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 02-00913—Susan J. Dlott, District Judge.

Argued:  September 20, 2005

Decided and Filed:  December 14, 2005

Before:  DAUGHTREY, MOORE, and McKEAGUE, Circuit Judges.

—————————

## COUNSEL

**ARGUED:**  Richard A. Cordray, Grove City, Ohio, for Appellants.  Ted T. Martin, BAKER & HOSTETLER, LLP, Cincinnati, Ohio, for Appellees. **ON BRIEF:**  Richard A. Cordray, Grove City, Ohio, Timothy M. Burke, MANLEY & BURKE, Cincinnati, Ohio, John A. West, William T. Robinson, III, Rhonda S. Frey, GREENEBAUM, DOLL & MCDONALD, Covington, Kentucky, for Appellants. Ted T. Martin, BAKER & HOSTETLER, LLP, Cincinnati, Ohio, Christian J. Schaefer, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, Brian G. Dershaw, Sidney Weil, BECKMAN, WEIL, SHEPARDSON, Cincinnati, Ohio, for Appellees.

—————————

## OPINION

—————————

DAVID W. McKEAGUE, Circuit Judge.  This action presents a challenge to Hamilton County's distribution of public funds for provision of indigent health care services.  The County's actions are alleged, by certain health care providers who have not received such funds, to have resulted in a denial of their due process and equal protection rights.  The district court awarded summary judgment to the defendants. *TriHealth, Inc. v. Board of Com'rs*, 347 F.Supp.2d 548 (S.D. Ohio 2004).  The plaintiffs now appeal.  For the reasons set forth below, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Since 1966, the voters of Hamilton County, Ohio, have used a series of tax levies, each covering a five-year period, to fund delivery of health care services to indigent county residents.  The most recent such Hamilton County Health and Hospitalization Tax Levy was approved by the voters in November 2001.  Defendant Board of County Commissioners thereafter entered into an Agreement Regarding Use of Hamilton County Health and Hospitalization Tax Levy Proceeds ("Agreement") with defendants University of Cincinnati, University Hospital, Inc., and Children's Hospital Medical Center for the period January 1, 2002, to December 31, 2006.  The Agreement provides for a continuation of the pre-existing relationship, whereby tax levy funds designated for indigent patient health care services (amounting to approximately $42 million per year) are distributed through the University of Cincinnati to University Hospital (80 percent) and Children's Hospital (20 percent) in reimbursement for services rendered to the indigent and uninsured.

In unanimously approving the 2002 Agreement, the three-member Board of Commissioners rejected the request by other local health care providers, plaintiffs TriHealth, Inc., Good Samaritan Hospital and Bethesda North Hospital (referred to collectively as "TriHealth"), to "share" the levy funds among other Hamilton County hospitals as well.  Although the "sharing" proposal was given serious consideration as an equitable approach, the comments of the Commissioners at the September 18, 2002, meeting in which the Agreement was approved reflect apprehension about the administrative difficulties and expenses associated with such a change.  Recognizing that health care in the greater Cincinnati area was in a state of economic crisis, and concerned that increased administrative expenses would result in a reduction of funds available for actual delivery of health care, the Commissioners opted to retain the status quo.  They decided to distribute the levy proceeds to the two hospitals with which the County had had long-term successful relationships, the two hospitals that undisputedly had been the predominant providers of indigent care in Hamilton County.  "Sharing" was rejected in part for lack of information regarding its ultimate impact.

The Board reached its decision only after significant consultation and deliberation, a process in which TriHealth actively participated.  An independent Tax Levy Review Committee conducted public hearings and received the report of consultant Jefferson Wells International.  Despite the recommendation of Jefferson Wells that the County "consider" providing levy funds to all qualified health systems that provide indigent care, the Committee ultimately voted five to four against sharing until more information were made available.  The Board's approval of the Agreement was thus consistent with the recommendation of a majority of the Committee members, as well as the recommendation of the County Administrator.

Within three months, the TriHealth plaintiffs commenced this action.  In relevant part, their amended complaint sets forth two federal civil rights claims under 42 U.S.C. § 1983, for infringement of their due process and equal protection rights; and a state law claim, alleging the Board's approval of the Agreement is violative of competitive bidding requirements under Ohio law.

In the equal protection claim, TriHealth alleges the Board, by awarding the adult indigent care funds exclusively to University Hospital, unlawfully discriminated against other similarly situated hospitals without rational basis.[1]  The district court determined first that TriHealth had failed to state a valid equal protection claim.  Second, the court held that even if a valid claim were deemed to have been stated, the evidence was insufficient as a matter of law to substantiate a finding either that the TriHealth hospitals were similarly situated to University Hospital or that every conceivable rational justification for the Board's decision had been disproved.

---

[1]Although Children's Hospital is named as a defendant, TriHealth acknowledges that Children's Hospital provides specialized care to indigent children and that no other hospital in Hamilton County is similarly situated to it.  The equal protection claim, therefore, is not premised upon and does not challenge the County's award of 20 percent of the levy proceeds to Children's Hospital.

In the due process claim, TriHealth alleges that hospitals denied the right to compete for a share of the levy proceeds were denied due process. The district court concluded that TriHealth had failed to establish the existence of a constitutionally protected property interest. For purposes of its analysis, the district court *assumed*, without actually resolving the question, that the Board was required by Ohio law to apply the competitive bidding process in awarding the contract. Even then, the court concluded that the Board would still have retained discretion to award the contract as it saw fit. Consequently, TriHealth would not have had a legitimate claim of entitlement to the contract, but only a unilateral expectation, which is insufficient to make out a protected property interest.

Accordingly, the district court awarded summary judgment to the Board on both of TriHealth's federal civil rights claims. The court dismissed TriHealth's remaining state law claim without prejudice, as it declined to exercise continuing supplemental jurisdiction. Subsequently, TriHealth filed suit in the Hamilton County Court of Common Pleas in pursuit of its state law remedies, *Trihealth, Inc. v. Board of Com'rs*, No. A-0501396, which action is still pending.[2] In addition, TriHealth now appeals the district court's summary judgment ruling on both civil rights claims.

## II. ANALYSIS

### A. Standard of Review

The court of appeals reviews *de novo* an order granting summary judgment. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Id.* Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* issue of *material* fact. *Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2005). A dispute is "genuine" only if premised on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). A factual dispute concerns a "material" fact only if its resolution might affect the outcome of the suit under the governing substantive law. *Id.*

### B. Equal Protection Claim

#### 1. *"Class of One" Theory*

The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The TriHealth plaintiffs have not alleged infringement of any fundamental right or that they are members of a suspect class. Rather, they rely on the "class of one" theory, alleging that the County, under color of state law, treated them differently without rational basis. A "class of one" plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will. *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710-11 (6th Cir. 2005). The TriHealth plaintiffs rely on the former theory. To prevail, they must demonstrate that the differential treatment they

---

[2]On July 25, 2005, the state court denied the defendants' motions to dismiss the complaint. A preliminary case management schedule has been established requiring that summary judgment briefing on the applicability of Ohio law's competitive bidding requirements to the County's Agreement be completed and oral arguments heard in December 2005.

were subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the County's actions were irrational. *Id*. at 710.

As the district court observed, the "class of one" theory is ill-suited to the facts of this case. Unlike the plaintiff in the case primarily relied on by TriHealth, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), TriHealth is not a person or entity alleged to have been intentionally singled out by government for discriminatory adverse treatment. Rather, the TriHealth plaintiffs are three named health care providing plaintiffs in this action – three among a total of nine Hamilton County entities that might have been qualified to share in the distribution of the tax levy funds that were instead awarded exclusively (for purposes of the equal protection claim) to University Hospital. It thus appears that the only "class of one" implicated by this claim is University Hospital. In effect, the TriHealth plaintiffs complain not that they were singled out for adverse treatment, but that University Hospital was singled out for beneficial treatment. TriHealth has cited no authority for the proposition that the "class of one" theory can be used to make out an equal protection violation under such circumstances.[3]

Indeed, the district court's characterization of TriHealth's claim as a spurious challenge to the County's "consumer's choice" appears to be closer to the mark. A governmental agency generally enjoys broad freedom to enter into contracts with private parties for the purchase of services. *Foto USA, Inc. v. Bd. of Regents of Univ. Sys. of Fla.*, 141 F.3d 1032, 1037 (11th Cir. 1998); *Coyne-Delaney Co. v. Capital Dev. Bd.*, 616 F.2d 341, 343 (7th Cir. 1980).

TriHealth contends that the County's freedom of contract was not so broad in this case, but was restricted by Ohio law's competitive bidding requirements, and that the Board improperly disregarded those requirements. The applicability of the competitive bidding requirements is a question left unaddressed by the district court. It is a question currently pending in state court and is not presently before this court. Yet, even if the competitive bidding requirements were deemed applicable, such a determination would afford little support for the equal protection claim. TriHealth has not even argued that the Board's noncompliance with the bidding requirements represents evidence of invidious discrimination. Instead, the noncompliance is said to be significant because it demonstrates the lack of a rational basis for the County's actions.

In this regard, TriHealth relies on *Bower v. Village of Mount Sterling*, 44 Fed. Appx. 670 (6th Cir. 2002). As an unpublished opinion, *Bower* lacks precedential effect and is not binding on us. *See* 6th Cir. R. 206(c); *United States v. Webber*, 208 F.3d 545, 551 n. 3 (6th Cir. 2000). Yet, comparative examination of *Bower* is instructive, exposing the relative weakness of TriHealth's equal protection claim.

In *Bower*, the court reversed the district court's dismissal of a "class of one" equal protection claim under Fed. R. Civ. P. 12(b)(6), noting that all well-pleaded fact allegations in the complaint had to be accepted as true and that the claim could be properly dismissed only if it appeared beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. The court held Bower had sufficiently alleged that he was similarly situated to others who received different treatment, and that his disparate treatment was motivated by invidious, retaliatory animus. Further, the court held Bower's colorable charge that the defendant had proceeded in a manner contrary to state law was sufficient to overcome the presumption of rationality that otherwise attached to governmental action.

*Bower* is distinguishable in several material respects. First, in reviewing the district court's award of summary judgment, we are not bound by the "decidedly liberal" standard of review applied to a complaint challenged under Rule 12(b)(6). *See Andrews v. State of Ohio*, 104 F.3d 803, 806 (6th Cir. 1997).

---

[3]We recognize that "the number of individuals in a class is immaterial for equal protection analysis." *Olech*, 528 U.S. at 564 fn.*. Intentional discriminatory treatment without rational basis is the hallmark of any equal protection claim, irrespective of the numbers of respective class members. Still, the incongruity between the theory asserted and the facts complained of is manifest and telling.

We are not required to accept TriHealth's fact allegations as true, but must consider and evaluate the evidentiary record as a whole and determine whether there is a genuine issue for trial. Second, unlike Bower, TriHealth has neither alleged nor adduced evidence of invidious discrimination by the Board. Third, whereas in *Bower* the legal impropriety of the defendant's action was patent, it is far from clear in this case that the Board's failure to use competitive bidding was contrary to Ohio law. Hence, the presumption of rationality is not so clearly overcome in this case as in *Bower*.

Further, even assuming the complained of differential treatment is cognizable as an equal protection claim, summary judgment was, for the reasons stated by the district court, properly awarded to the Board. The district court concluded that the TriHealth hospitals were not similarly situated to University Hospital in all material respects and that TriHealth had failed to negative every conceivable rational basis for the Board's distribution of all levy funds available for adult indigent health care to University Hospital. In this conclusion, we find no error, as outlined below.

### 2. *Similarly Situated*

The district court summarized and evaluated the parties' respective positions on the extent to which they were similarly situated as follows:

> TriHealth argues that the TriHealth Hospitals are similarly situated to Defendant Health Care Providers because, among other reasons: 1) all are private, non-profit entities exempt from federal and state taxation, and as such are required to treat indigent patients; 2) both Good Samaritan (one of the TriHealth Hospitals) and University Hospital operate within the urban core; 3) both University Hospital and the TriHealth Hospitals are recognized as providers of high quality medical care; 4) both University Hospital and the TriHealth Hospitals provide health care to indigent, Medicare, Medicaid, and other vulnerable patients and are thus all part of the health care safety net for Hamilton County; and 5) University Hospital and the TriHealth Hospitals provide essentially the same services to the indigent population they serve.

> Defendants argue that the TriHealth Hospitals and Defendant Health Care Providers are not similarly situated because they differ in several material respects. Defendants point out that: 1) University Hospital has the most experience providing care to the indigent and provides more indigent care than any other hospital in the County; 2) Ohio law classifies University Hospital, but none of the TriHealth Hospitals, as a "teaching hospital"; 3) University Hospital is the exclusive provider of certain adult hospital care services in Hamilton County; and 4) while University Hospital and Good Samaritan Hospital are both located in the urban core, Bethesda North, another member of TriHealth, is not. Though TriHealth raised some allegedly disputed issues of material fact in its Response to the County Defendants' Motion for Summary Judgment, TriHealth did not dispute any of the former contentions.

> Even accepting TriHealth's contentions, the undisputed differences cited by Defendants and noted above support Defendants' claim that Plaintiffs and Defendants are not similarly situated in certain material respects.

*TriHealth*, 347 F.Supp.2d at 554 (citation, footnote omitted).

On appeal, TriHealth takes exception only to the district court's conclusion that the undisputed differences are *material*. TriHealth maintains the identified differences can be deemed material only if relevant to the Board's decision not to share the levy funds. TriHealth insists the differences are not relevant and that the hospitals are similarly situated in all relevant respects. The district court's reasoning

in reaching a contrary conclusion is not explicit.  It is obvious, however, that materiality cannot be evaluated in a vacuum.  Materiality is an integral element of the rational basis inquiry.  Disparate treatment of similarly situated persons who are dissimilar only in immaterial respects is not rational.  Conversely, disparate treatment of persons is reasonably justified if they are dissimilar in some material respect.  Hence, we turn to the rational basis analysis, the linchpin of the test.

### 3. *Rational Basis*

Where, as here, no suspect class or fundamental right is implicated, governmental action subject to equal protection scrutiny under the rational basis test must be sustained if *any* conceivable basis rationally supports it.  *Federal Communications Commission v. Beach Communications, Inc.*, 508 U.S. 307, 313-14 (1993); *37712, Inc. v. Ohio Dept. of Liquor Control*, 113 F.3d 614, 622 (6th Cir. 1997).  The Board has no obligation to produce evidence to sustain the rationality of its action; its choice is presumptively valid and "may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications*, 508 U.S. at 315.  Nor can the Board's classification be deemed to lack rational justification simply because it "is not made with mathematical nicety or because in practice it results in some inequality." *Id*. at 316 n. 7 (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)).  An equal protection violation will be made out only if the Board's action is shown to be "irrational." *Warren*, 411 F.3d at 710.

This standard of review is "a paradigm of judicial restraint," growing out of recognition that "equal protection is not a license for courts to judge the wisdom, fairness or logic of legislative choices." *Beach Communications*, 508 U.S. at 313-314.  "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Id.* at 314 (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)).

The district court concluded as a matter of law that TriHealth had not carried its heavy burden of negativing every conceivable basis for the Board's decision.  The court reasoned that the undisputed differences between University Hospital and the TriHealth hospitals, summarized above, together with the Tax Levy Review Committee recommendation against sharing, represented "undisputed rational justifications" for the Board's decision. *TriHealth*, 347 F.3d at 555.  We agree.

We need not speculate about *conceivable* justifications for the Board's decision.  The record contains ample undisputed evidence of the Board members' actual thought processes.  Among the reasons cited are several that are factually supported and undeniably reasonable.  University Hospital had been the predominant provider of adult indigent health care in Hamilton County and is the only hospital with the ability to provide services in all specialty care areas, in addition to primary care services.  Therefore, it was deemed reasonable to expect that University Hospital would continue to provide the majority of such care from 2002 to 2006 and would deserve reimbursement therefor.

Moreover, since 1966, tax levy proceeds had been distributed by the County to University Hospital, establishing a relationship which, if not perfect, was at least familiar.  University Hospital's track record afforded promise of stability and continuity, whereas the prospect of altering the status quo and sharing proceeds among several hospitals was reasonably viewed as creating uncertainty, additional administrative and financial burdens, and the risk that change might compromise the ultimate mission, delivery of health care to the most needy of the community.  In these relevant respects, the TriHealth hospitals were certainly not similarly situated to University Hospital.

In addition, the Board was clearly, and not unreasonably, influenced by recommendations against sharing – not only that of the Tax Levy Review Committee, but also those of the County Administrator, David Krings, and the City of Cincinnati Health Commissioner, Malcom P. Adcock, Ph.D.  Yet, the Board did not turn a deaf ear to TriHealth's objection that levy proceeds ought to be divided proportionately among

all county hospitals that provide adult indigent health care. The Board noted that the matter was subject to reconsideration and the Agreement subject to amendment, upon presentation of additional information meriting such a change.

In challenging the Board's action, TriHealth cites several reasons to question the wisdom and fairness of the Board's decision. But the wisdom, fairness and logic of the Board's choice are all matters beyond the purview of our scrutiny. Because TriHealth is unable to disprove all conceivable justifications for the Board's decision not to share the levy proceeds, the Board's decision is not shown to be irrational, does not violate equal protection, and must be sustained as a matter of law. The district court's judgment, in this respect, must be affirmed.

## C. Due Process Claim

TriHealth's due process claim is premised on the allegation that the County had a duty under Ohio law to use a competitive bidding process in distributing the levy proceeds. This legal obligation is said to have given rise to a property interest, in the TriHealth hospitals, to participate in the bidding process. By awarding the contract to University Hospital without allowing them to submit a bid, the County is said to have deprived them of property without due process.

We must determine first whether TriHealth had a property interest that was interfered with by the Board under color of state law. *Warren*, 411 F.3d at 708. To establish the existence of a constitutionally protected property interest, TriHealth must demonstrate that it had "a legitimate claim of entitlement," not "a mere unilateral expectation" in the interest said to be interfered with. *Board of Regents v. Roth*, 408 U.S. 569, 577 (1972). Property rights are created and defined not by the Constitution, but by independent sources such as state law. *Warren*, 411 F.3d at 708. If the existence of a protected property interest is established, then we must determine whether the procedures accompanying the Board's interference are constitutionally sufficient. *Id.* at 709. Where, as here, the interference is alleged to have resulted from a random and unauthorized act, rather than from an established procedure under state law, the accompanying procedures will be deemed insufficient only if available state remedies would not adequately compensate TriHealth for the loss. *Id.*

### 1. *Protected Property Interest*

In contending that the Ohio competitive bidding statute creates a protected property interest, TriHealth relies on *Enertech Elec., Inc. v. Mahoning County Com'rs*, 85 F.3d 257, 260 (6th Cir. 1996), where the court observed:

> A constitutionally protected property interest in a publicly bid contract can be demonstrated in two ways. A bidder can either show that it actually was awarded the contract and then deprived of it, or that, under state law, the County had limited discretion, which it abused, in awarding the contract.

TriHealth does not contend that it was actually awarded the contract and then deprived of it, but contends the County had limited discretion in awarding the contract, which it abused. The district court correctly determined that *Enertech* is inapposite.

First, *Enertech* applies specifically to publicly bid contracts. The September 18, 2002 Agreement Regarding Use of Hamilton County Health and Hospitalization Tax Levy Proceeds is undisputedly not a publicly bid contract and TriHealth is not a "disappointed bidder." The Agreement was entered into by the County pursuant to Ohio Revised Code § 339.11. Section 339.11 provides in relevant part:

> The board of county commissioners may enter into an agreement with one or more corporations or associations organized for charitable purposes or for the purpose of

maintaining and operating a hospital in any county in which such hospital has been established, for the care of the indigent sick and disabled.... The document used to verify the agreement shall specify the terms that have been agreed upon by the board and such corporations or associations.

The Board views this provision as granting it practically unbridled freedom of contract in connection specifically with provision of indigent health care. TriHealth, on the other hand, insists R.C. § 339.11 must be read in light of the more generally applicable R.C. § 307.86, requiring that anything to be purchased, leased or constructed (subject to enumerated exceptions) on behalf of a county at a cost of over $25,000, be obtained through competitive bidding. TriHealth therefore argues that the contract *ought* to have been awarded through competitive bidding.

Reconciliation of these two statutory provisions remains an open question, now pending in state court. Irrespective of the ultimate resolution, however, the fact remains that the 2002 Agreement between the County and the University of Cincinnati and University Hospital was not and is not a publicly bid contract. TriHealth did not even submit a bid, much less a bid which the County, subject to any statutorily imposed limitations on its discretion, would have been obliged to accept in awarding the contract.[4] Not having even submitted a bid, TriHealth can hardly have had a legitimate claim of entitlement to award of the contract. Absent such a legitimate claim of entitlement, TriHealth cannot establish the existence of a property interest in award of the contract.

Yet, notwithstanding its reliance on *Enertech*, TriHealth's due process claim does not actually rest on a claim of entitlement to award of the contract. Rather, Trihealth alleges it was entitled under Ohio law to compete for the contract in a competitive bidding process. By erroneously interpreting Ohio law, the Board is said to have abused its discretion, thereby denying TriHealth its opportunity to participate in the legally required competitive bidding process.

Again, TriHealth's argument is flawed. TriHealth cannot have a protected property interest in the *procedure* itself, whereby the contract was or ought to have been awarded. *See Richardson v. Township of Brady*, 218 F.3d 508, 517-18 (6th Cir. 2000); *LRL Properties v. Portage Metro Housing* Authority, 55 F.3d 1097, 1110 (6th Cir. 1995); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 34 (6th Cir. 1992). Hence, even if the procedure followed by the County is ultimately held to have been violative of Ohio's competitive bidding requirement, this violation does not give rise to a property interest that can be vindicated through a due process claim under 42 U.S.C. § 1983. *See LRL Properties*, 55 F.3d at 1110. TriHealth simply has not established the existence of a constitutionally protected property interest.

Also meritless is TriHealth's argument that the Board's allegedly erroneous interpretation of law constitutes an abuse of discretion in awarding the contract, which in turn constitutes a due process violation under the *Enertech* standard. In support of this argument that an erroneous legal conclusion is always an abuse of discretion, TriHealth cites *United States v. Camejo*, 333 F.3d 669, 676 (6th Cir. 2003), and *United States v. Taylor*, 286 F.3d 303, 305 (6th Cir. 2002). Neither case has anything to do with an abuse of discretion as a due process violation. Both cases involve appellate review of a sentencing court's application of the Sentencing Guidelines and relate to the different standards of review that apply to a sentencing court's determinations of law (*de novo* review) and exercise of judicial discretion (deferential "abuse of discretion" review). Neither case has any application to this case or offers any support for the proposition that the Board's failure to use competitive bidding, even if erroneous, constitutes an abuse of discretion effecting a deprivation of property without due process.

---

[4] Nor do the Trihealth hospitals even argue that they would have been competent to provide the breadth of indigent health care services contemplated by the Agreement and assumed by University Hospital.

Accordingly, we affirm the district court's holding, as matter of law, that the TriHealth plaintiffs have no protected property interest and cannot maintain their due process claim. Moreover, although we need not reach the issue, it is also apparent that, even if TriHealth were able to demonstrate interference with a protected property interest, state law affords a remedy adequate to comport with due process.

### 2. *Adequacy of State Law Procedure*

"The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895 (1961)). In evaluating the adequacy of procedures available under Ohio law, we consider such factors as the nature of the private interest affected, the risk of erroneous deprivation through the procedures used, the probable value of additional safeguards, and the government's interests, including fiscal and administrative burdens that may be implicated. *Moore v. Board of Educ. of Johnson City Schools*, 134 F.3d 781, 785 (6th Cir. 1998).

Here, TriHealth's claim of wrongdoing by the Board depends fundamentally on a novel theory, a theory with which the Board had never been confronted despite having distributed levy funds since 1966, and a theory with which it was not even confronted prior to the 2002 Agreement. The theory is based on an interpretation of arguably conflicting provisions of Ohio law on which the Ohio courts have yet to speak. To resolve this question of first impression, TriHealth's access to "ordinary judicial process" in the Ohio courts, *see Lujan*, 532 U.S. at 197, through an action for declaratory and injunctive relief, is not only sufficient to comport with due process, but is clearly the best way for TriHealth to pursue its remedies. The pendency of just such an action, in which the state court has already denied motions to dismiss and is scheduled to hear arguments on summary judgment issues in December 2005, clearly evidences the adequacy of state law procedures to address the merits of TriHealth's grievance.

We therefore conclude that even if TriHealth's claim implicated a protected property interest, which it clearly does not, the remedial procedure afforded under Ohio law is adequate to comport with due process.

### III. CONCLUSION

For the foregoing reasons, we find no error in the district court's analysis. The district court's award of summary judgment in favor of the Board of Commissioners on TriHealth's equal protection and due process claims is therefore **AFFIRMED.**