**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0598n.06

**No. 20-1291**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>RAYMOND SHAVERS,</td><td>)</td><td rowspan="10"><strong>FILED</strong><br>Oct 21, 2020<br>DEBORAH S. HUNT, Clerk</td></tr>
<tr><td>    Plaintiff-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>       v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>ALMONT TOWNSHIP, MICHIGAN; IDA LLOYD,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Defendants-Appellees.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: BATCHELDER, GRIFFIN, and MURPHY, Circuit Judges.

GRIFFIN, Circuit Judge.

The Almont Township Planning Commission took several months to approve plaintiff Raymond Shavers' request to build a pole barn on his property. Shavers lost a business opportunity due to this delay, which he says was motivated by his race. He then sued Almont Township and its zoning administrator, asserting their actions violated the Constitution and constituted gross negligence under Michigan law. In a comprehensive opinion, the district court granted summary judgment in defendants' favor on all counts. We agree and affirm.

I.

A.

In July 2017, plaintiff entered into a verbal agreement with AJ Metals Processing, Inc., wherein he agreed to build a pole barn on his property located in Almont Township, Michigan by the first quarter of 2018. AJ Metals in turn agreed to lease storage space in the barn (and an

adjacent building) for twenty-four months, with the option of renewing thereafter. Two things stood in the way before construction could begin: (1) resolution of a zoning issue; and (2) procurement of a building permit. The first was easily addressed, but the second led to this litigation.

First, the zoning issue. The property was two distinct parcels, one zoned for industrial use and the other for agricultural/residential use. Shavers filed a petition with Almont Township to rezone the property into a single parcel zoned for industrial use. Almont Township's Planning Commission unanimously recommended that the Township approve the petition in September 2017, which the Almont Township Board unanimously accepted in October 2017.

The building-permit process began thereafter. Shavers submitted a site plan review application to the Township's zoning administrator, defendant Ida Lloyd. She deemed the application "complete," and told Shavers that he could start construction, notwithstanding the lack of a building permit, because it was "going to be easy-peasy and [would] . . . fly right through."[1] And so Shavers did.

Shavers' early construction caught the attention of a Planning Commission member who asked Lloyd why construction was in progress when the Commission had yet to review and approve Shavers' site plan. Lloyd responded that "[n]o one in the building department or zoning department ha[d] authorized any construction," dispatched the township's ordinance enforcement officer to issue a stop-work order, and advised that she "requested that [Shavers] send [her] an apology letter so that the Planning Commission and the Building Department will note that [Shavers] took this upon himself and was not authorized by the township to begin construction."

---

[1]Lloyd denies that she told Shavers he could start construction without the permit, but we must take as true Shavers' account given the procedural posture of this case.

Lloyd also called Shavers, "screaming" at him for starting construction. And she emailed another Township official (copying every Planning Commission member), writing that "Shavers is in deep trouble with the Township at the moment. I guess he couldn't wait for approvals." Shavers wrote the Planning Commission and Lloyd on December 11, 2017, wherein he apologized for his "misunderstanding."

Contemporaneously, the Township's two outside contractors retained to advise it on construction and planning issues, Corwin Mabery, PE and Caitlyn McGoldrick, submitted to the Planning Commission their evaluations of Shavers' site plan. Both professionals raised numerous issues—namely missing required information—with the plan. Mabery's conclusion was blunt:

> The site plan, as submitted, does not include the required information for consideration of approval. The information that is required may have a significant impact on the final layout of the site. At this time, we do not recommend approval of the plan as submitted.

The Planning Commission first met to consider Shavers' site plan on December 13, 2017. Shavers again apologized for starting construction early. The "Commissioners expressed their displeasure and asked why he didn't finish his first site plan," to which Shavers explained that weather and economic concerns drove his work-without-the-permit decision. (He made no mention of Lloyd's giving him permission to start.) The Planning Commission did not approve Shavers' petition; instead, it requested that Shavers review the professionals' reports and submit a revised plan that addressed their concerns.

This kicked off a series of proposals by Shavers, pushbacks by Mabery and McGoldrick, and non-approvals by the Planning Commission through June 2018 (when the Planning Commission finally approved Shavers' site plan). Shavers submitted revised site plans in December 2017, January 2018, and February 2018. Each time, Mabery and McGoldrick identified deficient aspects of Shavers' submissions, ranging from failing to submit signed and sealed plans,

to missing key information regarding (among others) drainage, grading, lighting, landscaping, screening, parking, soil conditions, utility lines, and setbacks. And Mabery continued to not recommend approval in his January and February evaluations of the December and January site plans.

The Planning Commission did not approve Shavers' site plans at its January or February 2018 meetings. At the January meeting, Mabery recommended (which the Planning Commission followed) that Shavers seek a variance with the Zoning Board of Appeals to clear up a "frontage" issue. (It was later determined that no variance was required.) And at the February meeting, the Planning Commission postponed its decision on Shavers' application "until all remaining issues are addressed pursuant to" Mabery and McGoldrick's reports.

Things changed in March 2018. After reviewing Shavers' fourth site plan (reviewed on March 5, 2018), Mabery recommended that the Planning Commission approve the plan subject to two conditions: (1) that Shavers address what he was going to do with the residential structure on the now-combined parcel; and (2) that Shavers provide certain additional information regarding a proposed "'pump' discharge system for the storm water detention system." And McGoldrick's report found that Shavers' revised plan addressed all outstanding issues save one, a soil boring report, which she recommended the Planning Commission waive. Importantly, all three of these items had appeared on their prior reports but were the only unresolved issues as of March 2018.

Accordingly, the Planning Commission voted in its next meeting to approve Shavers' application by a 5-1 vote, contingent upon Mabery's determination that the storm-water drainage system was acceptable. The Almont Township Engineering Board of Appeals successfully resolved the storm-water issue in Shavers' favor at its meeting in May 2018. Mabery then

recommended that the Planning Commission approve Shavers' application at its meeting on June 13, 2018, which it did by a 4-1 vote. The Township issued building permits two weeks later.

But that was too late for Shavers. Recall his agreement with AJ Metals required that he complete construction and make the property available to AJ Metals by the first quarter of 2018. AJ Metals pulled out of the agreement after Shavers was unable to comply with that timeline.

B.

Shavers commenced this four-count action shortly after receiving the building permits. Three claims are against the Township under 42 U.S.C. § 1983: (1) the Township intentionally delayed its approval of the site plan because of his race in violation of the Fourteenth Amendment's Equal Protection Clause; (2) the Township retaliated against him for opposing the Planning Commission's "racist and illegal decisions" in violation of the First Amendment; and (3) the Township subjected him to arbitrary zoning requirements in violation of his substantive due process rights under the Fourteenth Amendment. The last claim is for gross negligence under Michigan law against defendant Ida Lloyd for interfering with his business opportunity with AJ Metals. Following discovery, the district court granted summary judgment in defendants' favor on all counts. Plaintiff timely appeals.

II.

We review a district court's grant of summary judgment de novo. *Keith v. County of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To prevail, the nonmovant must show sufficient evidence to create a genuine issue of material fact," which is to say, "[t]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Napier v. Madison County*, 238 F.3d 739, 742

(6th Cir. 2001) (internal quotation marks omitted and second alteration in original). "We consider all facts and inferences drawn therefrom in the light most favorable to the nonmovant." *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001).

III.

The primary issue on appeal is whether the district court correctly granted summary judgment in the Township's favor on plaintiff's claim that the Planning Commission unconstitutionally delayed action on his application in violation of the Equal Protection Clause of the Fourteenth Amendment. Shavers relies on the "class of one" theory of discrimination; that is, he contends the Township "intentionally treated [him] differently from others similarly situated" and "there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). We agree with the district court that the similarly situated element need not be examined because Shavers cannot overcome rational basis review.[2]

Courts "generally view[]" class-of-one claims with skepticism given the potential to "provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461, 462 (6th Cir. 2012) (citation omitted). Thus, we impose a "heavy burden" on a plaintiff to overcome rational basis review. *Id.* at 462 (quoting *TriHealth, Inc. v. Bd. of Comm'rs of Hamilton Cty.*, 430 F.3d 783, 791 (6th Cir. 2005)). In this circuit, "[a] class of one plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negativing every conceivable basis

---

[2]We have not expressly addressed whether *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), renders invalid class-of-one actions challenging discretionary zoning decisions, such as the one here. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864 n.15 (6th Cir. 2012); *see also Johnson v. Morales*, 946 F.3d 911, 930–31 (6th Cir. 2020) (Nalbandian, J., dissenting) (questioning the cause of action's continued viability post-*Engquist*). Because Shavers' claim fails under our pre-*Engquist* caselaw, we need not resolve this issue today. *See EJS Props.*, 698 F.3d at 864 n.15.

which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005) (internal quotation marks and alteration omitted). Shavers can do neither.

A.

The record reflects a rational basis supporting the Township's actions: Mabery's multiple recommendations to the Planning Commission that it not immediately approve Shavers' repeated proposals. On three consecutive occasions, Mabery opined that Shavers' site plan should not be approved. Following that advice, the Planning Commission delayed a decision on the plan pending revisions. And once Mabery finally concluded that Shavers' fourth submission was acceptable to him (with two contingencies), the Planning Commission followed suit. It is logical—and laudable, even—for a government entity to rely on a subject-matter expert's recommendation when making decisions. Indeed, we have twice held the same, concluding that relying on a professional's advice provides a "conceivable basis" to reject a class-of-one claim. *See Superior Commc'ns v. City of Riverview*, 881 F.3d 432, 447 (6th Cir. 2018); *TriHealth, Inc.*, 430 F.3d at 791–92.

Shavers responds that the Planning Commission does not have an official policy to follow recommendations by third parties and that it does not always do so. But under the low standard that is rational basis review, the government "has no obligation to produce evidence to sustain the rationality of its action; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data." *TriHealth*, 430 F.3d at 790 (internal quotation marks omitted). Moreover, the government's underlying reasoning in fact is "constitutionally irrelevant." *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (citation omitted). Here, it was rational for the Planning Commission to not approve Shavers' site plan because Mabery told it not to.

Plaintiff also resists this conclusion by trying to demonstrate that the Planning Commission permitted a similar project with similar "problems" by Vintech Industries to conditionally proceed, yet delayed his. But whether he received disparate treatment is separate from whether there is a rational reason supporting that disparate treatment. There is no evidence that Mabery also recommended that the Planning Commission reject Vintech's proposal (or any other requests by other entities, for that matter); quite the opposite, Mabery advised that the Planning Commission conditionally approve that proposal on his first review. This distinction makes all the difference for purposes of whether a conceivable basis could support the Township's actions. And along similar veins, we do not have, as Shavers insists with his citation to *Loesel*, an occasion to question the "face value" of the Commission's following of Mabery's recommendations. That is because unlike in *Loesel*, Shavers does not attribute to Mabery any errors or mistakes underlying his recommendations to the Commission. 692 F.3d at 465–66 (concluding fact issue existed on whether an ordinance lacked a rational basis because the plaintiff had introduced evidence contradicting the city's municipal-land-use expert's testimony).

For these reasons, we agree with the district court that Shavers did not satisfy his burden to negate every conceivable basis which might support the Township's action.

B.

Shavers also cannot demonstrate that animus or ill-will motivated the Planning Commission's delayed approval of his site plan. We have previously defined these terms as reflecting a "deep-seated and sometimes virulent" act of "antagonism," "hostility," and "animosity." *Id*. at 466. Opposition to the requested action is not enough, strong or otherwise; rather, a class-of-one plaintiff must demonstrate that government officials directed their animus toward her. *Id.* at 467. Put differently, "a plaintiff must prove that the challenged government

actions were motivated by personal malice unrelated to the defendant's official duties." *Taylor Acquisitions, LLC v. City of Taylor*, 313 F. App'x 826, 838 (6th Cir. 2009) (citation and emphasis omitted).

Shavers relies upon two occurrences to establish the required hostility. He first points to his initial exchange with Lloyd, wherein she told him he could start construction early but then "screamed" at him for doing so, ultimately resulting in Shavers apologizing to the Planning Commission (of which Lloyd is not a member). But nothing in the record reflects that Lloyd's conduct had any effect on the Planning Commission's decision to delay a decision on his application. Sure, the Planning Commission noted its "displeasure" with Shavers, but that was in relation to his starting construction early and not with respect to his proposal in the first instance.

That leaves us with his only other "evidence" of animus—three social-media posts allegedly made by the Commission's chair that, Shavers says, show the chair harbors racist views. Setting aside whether these three posts are properly before us (for they were presented to the district court in Shavers' briefing without foundation or any record attribution), we cannot agree that they reflect animosity by the Planning Commission towards Shavers because there is no record evidence linking the chair's votes here to Shavers' race. But even if there were such evidence, we only attribute improper motives to public bodies "where improperly motivated members supply the deciding margin." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 262 (6th Cir. 2006). The votes here to delay Shavers' application were not on the margins.[3]

---

[3]Shavers does not engage with this caselaw, and instead offers in reply that *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2018), dictates a different result. We disagree. That case dealt with a state adjudicatory body's hostility towards a private citizen's sincere religious beliefs as evidenced both by some of the member's statements and the body's actions. *Id.* at 1729–30. The Supreme Court held that the Colorado Civil Rights Commission violated the plaintiff's right to a "neutral and respectful consideration of his claims" as required by "the First Amendment's guarantee that our laws be applied in a manner that is

In sum, we agree with the district court that the Township is entitled to entry of summary judgment in its favor on plaintiff's class-of-one claim.

IV.

Because Shavers' remaining claims rise and fall with his equal protection claim, we will address them in summary fashion. Having concluded that the Township's actions survive rational basis scrutiny, we hold, like the district court, that he cannot establish the required "arbitrary and capricious action" necessary for his substantive-due-process claim, *see Brody v. City of Mason*, 250 F.3d 432, 438 (6th Cir. 2001) (citation omitted), the "motivating factor" element sufficient to maintain his claim for retaliation under the First Amendment, *see Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337 (6th Cir. 2010), or the "proximate cause" requirement to defeat Lloyd's governmental immunity for his gross-negligence claim, *Ray v. Swager*, 903 N.W.2d 366, 372 (Mich. 2017).

V.

For these reasons, we affirm the district court's judgment.

---

neutral toward religion." *Id.* at 1729, 1732. That is a far cry from Shavers' allegations of discriminatory conduct, which involves neither a First Amendment religion claim nor an act "by an adjudicatory body." *Id.* at 1730.